**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **DONTA L. CADE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | Case No. 3:15-cv-01297-JPG |
| | ) | |
| **DR. J. COE,** | ) | |
| **KATHY D. MUSGRAVE,** | ) | |
| **L. PHILLIPPE,** | ) | |
| **JEFFREY STRUBHART,** | ) | |
| **RYAN SCHOON, and** | ) | |
| **JANE DOE 1,** | ) | |
| **JANE DOE 2,** | ) | |
| **MIKE HIGGENS, and** | ) | |
| **E. BARE,** | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM AND ORDER</u>

**GILBERT, District Judge:**

Plaintiff Donta Cade is currently incarcerated at Cook County Department of Corrections in Chicago, Illinois. Proceeding *pro se*, Cade has filed a complaint pursuant to 42 U.S.C. § 1983 against several employees of Lawrence Correctional Center ("Lawrence"), where Cade was previously incarcerated, alleging they violated his rights under the Eighth Amendment to the United States Constitution. Cade seeks monetary relief.

This matter is now before the Court for a preliminary review of Cade's complaint pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court shall review a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a government entity." During this preliminary review under § 1915A, the Court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint," if the complaint "is

frivolous, malicious, or fails to state a claim on which relief may be granted" or if it "seeks monetary relief from a defendant who is immune from such relief."

## Background

Cade's complaint alleges in detail several Eighth Amendment violations, all of which concern his attempts to seek medical treatment while at Lawrence. In October of 2014, Cade saw the prison physician, Defendant Dr. Coe, complaining about the appearance of "painful blistering bleeding sores"[1] on his head. (Doc. 1 at 7.) Cade suggested he was suffering from an infection, but Dr. Coe rejected this suggestion, instead settling on a diagnosis of psoriasis. Coe prescribed therapeutic shampoo and triamcinolone cream. (*Id.*)

Cade went to see Dr. Coe again, this time because the medication he had been prescribed was aggravating his blistering. (*Id.*) Coe informed Cade that he was experiencing folliculitis from overexposure to the cream. (*Id.* at 8.) Cade questioned this diagnosis, informing Coe that his "head was bleeding and pus-ing [sic.] way before" he was given the cream. (*Id.*) Cade asked Dr. Coe if he had "incompetently" treated him, and proceeded to ask for a culture test. (*Id.*) Dr. Coe denied that he had acted incompetently, and rejected the request for a culture test. (*Id.*) Instead, he prescribed Bactrim. (*Id.*) Cade took the Bactrim for the prescribed number of days (ten), but alleges that it did not clear up his sores. (*Id.*)

On March 5, 2015, Cade was seen by Defendant Mike Higgens, a prison nurse, in his housing unit. (*Id.*) Upon inspecting Cade, Higgens agreed that his head was infected. (*Id.*) He told Cade to go to the health care unit when his head begins to bleed again so that he could receive a culture test. (*Id.* at 8-9.) When Cade next saw Dr. Coe, however, the physician told

---

[1] Cade refers both to "sores" (plural) and "a boil" (singular)—as well as other synonyms—when describing his injury, rendering the Court unsure as to the exact physical manifestation of his injury. Needless to say, this does not impact the Court's opinion as to the presence of a serious medical condition. *See infra.*

Cade that what Cade believed were sores emitting dried blood and pus were actually scabs, indicating that Cade's head was healing. (*Id.* at 9.) Cade protested, but to no avail. (*Id.*)

When Cade next began bleeding and emitting pus, he went to the health care unit to receive a culture test. (*Id.*) Cade was seen by two nurses (Jane Does 1 and 2[2]). (*Id.*) The nurses inspected him for no more than five minutes, told him there was nothing wrong, and that actually he "had jus[t] been picking at a keloid." (*Id.*) He tried to explain to them that he had been suffering from this condition for some time, but he was simply sent back to his housing unit. (*Id.*)

Two days after seeing the Jane Does, Cade filed his first grievance. (*Id.* at 10.) The grievance was directed at Dr. Coe's allegedly "incompetent" and deliberately indifferent treatment. (*Id.*) Cade's grievance was denied by his housing counselor, Defendant Kathy D. Musgrave. (*Id.*) Cade, however, never received a copy of his grievance. When he asked Musgrave, she informed him that it had probably been thrown away. (*Id.*) This prohibited Cade from appealing her decision. Cade further notes that the summary of her decision closely tracked Dr. Coe's assessment from Cade's medical records, indicating that she never investigated his claim. (*Id.*)

On April 20, 2015, Cade was seen by Defendant Higgins. (*Id.*) Cade asked Higgins if he could put him in for a culture test, and told about the problems he had with the Jane Does. (*Id.* at 10-11.) Higgins informed Cade that only a doctor can order a culture test, but that, in any event, what Cade required was selenium sulfide shampoo. (*Id.* at 11.) When Cade asked if this would really work, noting that he was skeptical due to the multiple failed diagnoses he had been issued, Higgins started becoming noticeably angry. (*Id.*) To appease Higgins, Cade requested the

---

[2] Where a prisoner's complaint states specific allegations describing conduct of individual prison staff members sufficient to raise a constitutional claim, but the names of those defendants are not known, the prisoner should have the opportunity to engage in limited discovery to ascertain the identity of those defendants. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). Cade has sufficiently stated claims against Jane Doe 1 and Jane Doe 2 and shall be allowed the opportunity to discover the names of these individuals.

shampoo. (*Id.*) Higgens told him he could not give it to him at that time because Cade had not requested it on his request slip. (*Id.*) He told Cade he would have to specifically request selenium sulfide shampoo on a request slip, but in the meantime he gave him some antibiotic ointment. (*Id.*)

Cade later obtained the shampoo. However, he alleges it "inflamed the sores." (*Id.*) Further, the antibiotic ointment allegedly rendered the sores oily. (*Id.*) Cade ceased using both substances. (*Id.*)

On May 3, 2015, Cade filed an emergency grievance. (*See* Doc. 1-2 at 8-9.) The grievance concerned all of the events detailed up to this point. (*Id.*)[3] His counselor, Defendant E. Bare, told him his grievance was not an emergency. (Doc. 1 at 12.) She made him cross out the box he checked on the grievance form indicating that it was an emergency and initial next to it. (*Id.*) She also told Cade she was going to consider his grievance a duplicate, owing to the fact that he never received a copy of his first grievance. Soon after it was filed, Bare denied Cade's second grievance. (*Id.*) Cade states that Bare did not investigate his claims and that, in fact, her decision tracked Musgrave's verbatim. (*Id.*)

On June 2, 2015, Cade saw Defendant L. Phillippe, the prison nurse practitioner. (*Id.* at 13.) Phillippe prescribed Bactrim. (*Id.*) Cade explained that he had been previously prescribed Bactrim to no avail, and asked instead for a culture test or treatment by a dermatologist. (*Id.*) Phillippe denied his request and gave Cade the Bactrim. (*Id.* at 14.)

Less than two weeks later, Cade experienced a serious allergic reaction to the Bactrim. (*Id.*) He was rushed to the health care unit, the Bactrim having caused tightness in his throat and hives all over his arms and legs. (*Id.*) He was given Benadryl, hydrocortisone, and

---

[3] The grievance also indicated that he was being charged for all of the medications he was being prescribed, and wanted this money back. (*Id.* at 8.)

chlorpheniramine tablets. (*Id.*) The next day, however, he was again rushed to the health care unit with the same symptoms. (*Id.*) He was given Benadryl and hydrocortisone and told to see the doctor in the morning on an emergency pass. (*Id.*)

Cade saw Dr. Coe the next morning. (*Id.* at 15.) He was told that he was allergic to Bactrim and sulfur-based drugs, and prescribed Benadryl. (*Id.*) Coe also examined Cade's head and determined that he had a staph infection. (*Id.*) He told Cade he would order an antiseptic for the infection. (*Id.*) Cade eventually received the antiseptic, but did not use it for more than a week as it irritated his skin. (*Id.* at 15-16.)

In the meantime, Defendant Grievance Officer Ryan Schoon denied Cade's second grievance, on appeal from Defendant Bare. (*Id.* at 16.) Cade alleges that, just as was the case with Musgrave and Bare, Schoon's decision indicated a lack of any investigation. (*Id.*) The response was not given to Cade until two days before he was set to be transferred to Stateville Correctional Center (from where he would then be sent to the Cook County Department of Corrections). (*Id.*) He was never given his grievance, which Cade believes was done too keep him from appealing within the mandated thirty-day period. (*Id.*)

Cade, convinced that maliciousness and malpractice was afoot, filed a grievance to obtain his medical records to establish he was being mistreated and that the defendants were "trying to cover for eachother [sic.]." (*Id.* at 17.) After waiting 40 days for a response, he appealed to Defendant Grievance Officer Jeffrey Strubhart, who denied his grievance. (*Id.* at 17-18.)

On June 28, 2015, Cade filed his final offender grievance. (*See* Doc. 1-2 at 1-2.) The grievance concerned all of the events detailed up to this point, emphasizing the seriousness of his head injury. (*Id.*) Cade alleges that by this time his sores had enlarged and become more painful and that he had gained an even bigger keloid on his head from the lack of proper treatment. (Doc.

1 at 18.) Defendant Musgrave denied his grievance, stating in her report that he had been treated and that his abscesses had been cured. (*Id.*)[4]

Cade was transported to Stateville Correctional Center on July 15, 2015. (*Id.*) By this time, his condition had worsened. (*Id.*) Five days later, he was sent to the prison doctor due to his poor state. (*Id.*) The doctor concluded that his head was infected. (*Id.*) She gave him doxycycline and instructed him to take two-a-day for fourteen days. (*Id.*) At the end of the fourteen-day period, his sores apparently completely "cleared up." (*Id.*) The keloid in the back of his head, however, still caused a lot of pain. (*Id.* at 19.) He eventually saw a dermatologist who diagnosed him with acne keloidalis nuchae. (*Id.*)

## Discussion

To facilitate the management of future proceedings, and in accordance with the objectives of Federal Rules of Civil Procedure 8 and 10, the Court finds it appropriate to break the claims in Cade's *pro se* complaint into numbered counts, as shown below. The parties and the Court will use these designations in all pleadings and orders, unless otherwise directed by the Court. The designation of these counts does not constitute an opinion as to their merit.

**COUNT 1:** Coe, Phillippe, Jane Doe 1, Jane Doe 2, and Higgens each violated the Eighth Amendment when they treated Cade with deliberate indifference to his serious medical condition.

**COUNT 2:** Musgrave, Strubhart, Schoon, and Bare violated the Eighth Amendment when they responded with deliberate indifference to Cade's grievances.

**COUNT 3:** The defendants conspired to violate Cade's constitutional rights.

**COUNT 4:** Musgrave, Strubart, Schoon, and Bare violated Cade's due process rights when they denied his grievances without conducting proper investigations.

**COUNT 5:** Musgrave and Schoon violated Cade's due process rights when they failed to return two of his grievances.

---

[4] Also on June 28, 2015, Cade put in a request for sick call, but was not seen. (*Id.*)

### A. Deliberate Indifference Claims

The Eighth Amendment protects prisoners from cruel and unusual punishment. *See* U.S. CONST. amend. VIII. The Supreme Court has held that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2006) (per curiam). To state such a claim, prisoners must establish that (1) the medical condition was objectively serious, and (2) the state officials acted with deliberate indifference to the prisoner's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001). The complaint alleges an objectively serious medical condition: Cade asserts he experienced sores on his head that emitted blood and pus which caused substantial pain for the better part of a year, as well as a serious allergic reaction to prescribed medication. *See Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997) ("[T]he existence of chronic and substantial pain" indicate the presence of a serious medical condition.) (internal quotation marks and citations omitted). Whether Cade has stated valid Eighth Amendment claims, therefore, turns on whether he has alleged facts indicating the defendants acted with deliberate indifference to his health or safety.

Prison officials act with deliberate indifference when they "realize[] that a substantial risk of serious harm to a prisoner exists, but then disregard[] that risk." *Perez v. Fenoglio*, 792 F.3d 768, 776-77 (7th Cir. 2015) (citing *Farmer*, 511 U.S. at 837). "Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal quotation marks and citations omitted). However, the Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

Further, a defendant's inadvertent error, negligence, or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

Cade may proceed with **Count 1** against Coe, Phillippe, Jane Doe 1, Jane Doe 2, and Higgens. Cade alleges that some of these defendants performed cursory examinations of his condition whereas the severity of his pain warranted more serious investigation, and that each defendant prescribed medications that repeatedly proved ineffectual (and sometimes injurious), despite the fact that Cade was suffering from a debilitating medical condition. His allegations that these defendants ignored the obvious severity of his injury and, therefore, provided no meaningful care, merit further review.

Plaintiff may also proceed with **Count 2** against Defendants Musgrave, Schoon, and Bare at this time. In order to recover damages against prison officials in advisory roles, civil rights plaintiffs may not rely on a theory of supervisory liability, but "instead must allege that the defendant, through his or her own conduct, has violated the Constitution." *Perez*, 792 F.3d at 781. In *Perez*, the Seventh Circuit held that a prisoner's correspondence to a prison supervisor may "establish a basis for personal liability under § 1983 where that correspondence provides sufficient knowledge of a constitutional deprivation." *Id.* at 781-82. In that case, the court found that the plaintiff stated a proper claim for relief against prison officials where the officials obtained actual knowledge of the prisoner's medical condition through his "coherent and highly detailed grievances and other correspondences" and yet "failed to intervene on [the prisoner's] behalf to rectify the situation." *Id.* at 782.

Here, although Cade was unable to attach a copy of his first grievance on account of it having been allegedly thrown away, Cade did attach a copy of the second grievance he sent to

Defendant Bare and, after Bare denied the grievance, that he sent to Defendant Schoon. The grievance details Plaintiff's multiple attempts to receive adequate treatment for his condition, and describes the pain he was experiencing. The third offender grievance filed with Defendant Musgrave is similarly descriptive. Therefore, because Cade has presented to the Court detailed documentation indicating that Defendants Bare, Schoon, and Musgrave obtained sufficient knowledge of Cade's condition and yet failed to intervene on his behalf, **Count 2** survives preliminary review as to these parties.

**Count 2** may not proceed, however, as to Strubhart. Cade's grievance requesting his medical records does not detail his medical history or the pain he was experiencing. It merely states that he has requested his medical records to no avail and that he wishes to receive them. (Doc. 1-2 at 18.) Because this grievance was not "highly detailed" enough to put Strubhart on notice of Cade's serious medical condition, Strubhart is dismissed from this action without prejudice.

    **B.  Conspiracy Claim**

While it is not clear from the complaint, Cade also seems to bring a standalone conspiracy allegation concerning the defendants' alleged deliberate indifference to his medical condition (**Count 3**). As this claim is raised against defendants who already have claims against them in **Counts 1** and **2**, the conspiracy claim is duplicative, and **Count 3** must be dismissed without prejudice against them. *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988) (noting that the "function of conspiracy doctrine" in § 1983 cases "is merely to yoke particular individuals to the specific torts alleged in the complaint"). To the extent **Count 3** is an effort to draw Strubhart into **Count 3**, this is problematic under Federal Rule of Civil Procedure 8, which requires litigants to provide a minimum level of "factual content" to state a claim "that is

plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Especially for allegations of a vast prison conspiracy, a plaintiff "must meet a high standard of plausibility" to state a claim under Rule 8. *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009). In this case, all Cade puts forth is a conclusory allegation that the defendants conspired with one another to harm him and to cover for each other—he does not allege any details of the alleged agreement between the parties, nor anything else about the purported conspiracy. Without more developed allegations, Cade has not made out a viable conspiracy claim, and **Count 3** must be dismissed.

### C. Due Process Claims

Cade similarly does not explicitly state as such, but his complaint appears to present due process claims against Musgrave, Bare, Schoon, and Strubhart for their allegedly cursory reviews of his grievances (**Count 4**), and against Musgrave and Schoon for their failure to provide Cade copies of two of his grievances (**Count 5**). The Seventh Circuit, however, has squarely rejected any free-standing due process right concerning a prison's internal grievance process. *See, e.g.*, *Courtney v. Devore,* 595 F. App'x 618, 620–21 (7th Cir. 2014) ("[S]tate grievance procedures do not create substantive liberty interests protected by due process."); *Owens v. Hinsley,* 635 F.3d 950, 953–54 (7th Cir. 2011) ("Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause . . . ."); *Antonelli v. Sheahan,* 81 F.3d 1422, 1430 (7th Cir. 1996) ("[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause."). So **Count 4** and **Count 5** must be dismissed with prejudice.

### Pending Motions

The same day he filed his complaint, Cade filed a motion for recruitment of counsel (Doc. 3) and a motion for service of process at government expense (Doc. 4). The Court will first

discuss Cade's motion for counsel. There is no constitutional or statutory right to appointment of counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010). However, federal district courts have discretion under 28 U.S.C. § 1915(e)(1) to request counsel to assist *pro se* litigants. *Id.* When presented with a request to appoint counsel, the Court must make the following two inquiries: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007).

Concerning the second step of the inquiry, "the difficulty of the case is considered against the plaintiff's litigation capabilities, and those capabilities are examined in light of the challenges specific to the case at hand." *Id.* at 655. From a legal standpoint, the litigation of any constitutional claim falls in the complex range. Even so, Cade's petition adequately articulates his claims, and based on this ability, this Court concludes that Cade appears to be competent to litigate his case on his own at this time. Future developments in this case may alter the Court's decision, but at this early stage in the litigation, Cade's motion for appointment of counsel will be **DENIED** without prejudice. Cade may choose to re-file this motion at a later stage in the litigation.

Cade's motion for service of process at government expense is **GRANTED**. Waivers of service of summons will be issued and served on the defendants as ordered below. Cade is advised that it is not necessary for a litigant proceeding *in forma pauperis* to file a motion requesting service of process by the United States Marshal Service or other process server. The Clerk will issue summons and the Court will direct service for any complaint that passes preliminary review.

## Disposition

 **IT IS HEREBY ORDERED** that, for the reasons stated, **COUNT 1** shall **PROCEED** against Defendants **COE**, **PHILLIPPE**, **JANE DOE 1**, **JANE DOE 2**, and **HIGGENS**.

 **IT IS FURTHER ORDERED** that **COUNT 2** may **PROCEED** against Defendants **MUSGRAVE**, **BARE**, and **SCHOON**. **COUNT 2** is **DISMISSED without prejudice** as to **STRUBHART**.

 **IT IS FURTHER ORDERED** that **COUNTS 3**, **4**, and **5** are **DISMISSED without prejudice**.

 **IT IS FURTHER ORDERED** that the Clerk of Court shall prepare for Defendants **COE**, **PHILLIPPE**, **HIGGENS**, **MUSGRAVE**, **BARE**, and **SCHOON**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

 Service shall not be made on the **Jane Doe** defendants (**JANE DOE 1** and **JANE DOE 2**) until such time as Plaintiff has identified these **Jane Doe** defendants by name in a properly filed amended complaint. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

 **IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the

Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered) a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to a Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under § 1915 for leave to commence this action without being required to prepay fees and costs, the applicant and his or

her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

DATED: December 15, 2015

<u>*s/J. Phil Gilbert*</u>
J. Phil Gilbert
United States District Court