IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **DONTA L. CADE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 15-cv-1297-SCW** |
| | ) | |
| **DR. J. COE, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM AND ORDER

**WILLIAMS, Magistrate Judge:**

### INTRODUCTION

Plaintiff Donta Cade is an inmate incarcerated with the Illinois Department of Corrections. He brought the present lawsuit alleging violations of his civil rights stemming from allegedly inadequate treatment of a scalp condition. This matter is before the Court on Plaintiff's Renewed Motion for Immediate Medical Attention and Preliminary Injunction (Doc. 135). The Court has received briefing from the parties on the motion, and on October 17, 2017, held an evidentiary hearing, at which time it heard testimony from Plaintiff. (Doc. 142). The motion is now ripe for disposition. For the reasons discussed below, Plaintiff has demonstrated that he is entitled to a preliminary injunction, and the Motion (Doc. 135) is **GRANTED in part**.

### MERITS REVIEW

As an initial matter, the Court notes that no merits review of the Second

Amended Complaint filed on March 17, 2017 has been conducted. The Prison Litigation Reform Act requires a court to review a complaint in a civil suit filed by a prisoner seeking redress from a government entity, officer, and/or employee. **28 U.S.C. § 1915A(a)**. The Court is required to dismiss any claims that are "frivolous, malicious, or fail[] to state a claim upon which relief may be granted." ***Id.* at 1915A(b)(1)**. After receiving leave, Plaintiff filed an Amended Complaint on March 17, 2017; however, no merits review has yet been conducted. After reviewing the Second Amended Complaint, the Court finds that all of the counts set forth by Plaintiff in that complaint warrant further review. The Court **ADOPTS** the counts set forth by Plaintiff in the Second Amended Complaint.[1] (*See* Doc. 98). With Plaintiff's claims now firmly established, the Court addresses his motion seeking preliminary injunctive relief.

## BACKGROUND

According to his testimony, Plaintiff entered Lawrence Correctional Center ("Lawrence") in October 2014. At that time he was suffering from bleeding and pus emitting from two spots on the crown of his scalp. At some point, a dermatologist diagnosed Plaintiff with suffering from acne keloidalis nuchae ("AKN"). In his testimony and through his briefing, Plaintiff has described a series of treatments from October 2014 to the present. The various treatments provided to Plaintiff have failed to provide him with full relief from his AKN, however. While he has been provided an antibiotic that heals the infection caused by the AKN, Plaintiff still suffers from a keloid

[1] The Court's adoption today excludes the two Jane Doe defendants who were dismissed by the Court on August 18, 2017. (Doc. 127).

in the back of his head. He testified that the keloid causes a continuous throbbing pain, and that his head continuously itches. He has been unable to obtain relief from these symptoms, even after the three years of various treatments. Plaintiff estimates that he has been to a prison healthcare unit at least 20 times since October 2014.

On March 2, 2017, Plaintiff filed a motion seeking preliminary injunctive relief relating to treatment for his AKN. (Doc. 89). On May 31, 2017, in an Order agreed upon by the parties, the Court ordered Defendant Wexford Health Sources, Inc. ("Wexford") to provide Plaintiff with a physical examination of his AKN by a medical doctor at Graham Correctional Center (where Plaintiff now resides) for the purpose of recommending a course of treatment. (Doc. 117).

On June 5, 2017, Plaintiff was examined by Dr. Francis Kayira, who recommended a referral to a dermatologist. (Doc. 135-1). Dr. Kayira wrote on Plaintiff's progress notes: "Refer to dermatologist as trials of antibiotics and steroids…have failed." (*Id.*). Plaintiff testified that Dr. Kayira also verbally told Plaintiff that he was recommending that Plaintiff see a dermatologist because the antibiotics and other treatments had not worked. There is no mention of the Court's May 31, 2017 order in Dr. Kayira's notes.

Plaintiff was not referred to a dermatologist, however. On June 28, 2017, Dr. Kayira prepared a written referral denial. (Doc. 135-2). Dr. Kayira wrote "Request for Dermatology consult non approved by Dr. Ritz in collegial with Dr. Kayira. Acne keloids topical treatments have not worked." (*Id.*). Dr. Kayira indicated that the matter would be discussed the following week once information could "be obtained on

the court order." (*Id.*).

At his deposition, Dr. Kayira testified that the only reason he initially referred Plaintiff to a dermatologist was because "someone" told him that the Court had ordered Dr. Kayira to send Plaintiff somewhere. (Doc. 138-3, p. 2 – 3). He testified that, without the court order, he would not have issued the referral. (*Id.* at 3). According to Dr. Kayira, he would only send an inmate suffering from AKN to a specialist if surgery is required; however, Plaintiff's AKN did not warrant a referral. (*Id.*). He still acknowledged that past medications had not helped Plaintiff, but testified that had he not thought he was required to refer Plaintiff to a dermatologist, he would try different antibiotics or topical steroids. (*Id.* at 3, 4).

Dr. Kayira testified that he discussed his referral at a collegial. He testified that, as part of the collegial, he spoke with a Dr. Ritz, who is a Wexford physician located in Pittsburgh, Pennsylvania. (*Id.* at 4). According to Dr. Kayira, he told Dr. Ritz that he was referring Plaintiff to a dermatologist due to a court order. (*Id.*). Dr. Ritz asked for the order, but Dr. Kayira told him that he did not have it. (*Id.*). Dr. Kayira testified that Dr. Ritz then decided that the case would be continued until they could determine what the court order said. (*Id.*).

Plaintiff, however, testified that Dr. Kayira told him that the doctor did not know why Plaintiff's referral was denied, and that he would look into it and get back to Plaintiff. According to Plaintiff, Dr. Kayira did not get back in touch with Plaintiff on this matter. The back of Plaintiff's head later became infected again, and Plaintiff was

provided more of the same antibiotic he had been provided previously, along with a benzyl peroxide wash. To date, however, Plaintiff has not been referred to or otherwise seen by a dermatologist.

## PRELIMINARY INJUNCTION STANDARD

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." ***Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). *Accord Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right").** To win a preliminary injunction, a plaintiff must show (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm without the injunction, (3) that the harm he would suffer is greater than the harm a preliminary injunction would inflict on defendants, and (4) that the injunction is in the public interest. ***Judge v. Quinn*, 612 F.3d 537, 546 (7th Cir. 2010) (citing *Winter*, 555 U.S. at 20).** The "considerations are interdependent: the greater the likelihood of success on the merits, the less net harm the injunction must prevent in order for preliminary relief to be warranted." ***Judge*, 612 F.3d at 546.**

In the context of prisoner litigation, there are further restrictions on courts' remedial power. The scope of the Court's authority to enter an injunction in the corrections context is circumscribed by the Prison Litigation Reform Act (PLRA). ***Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012).** Under the PLRA, preliminary injunction relief "must be narrowly drawn, extend no further than necessary to correct

the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." **18 U.S.C. §3626(a)(2).** ***See also Westefer*, 682 F.3d at 683 (the PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: prison officials have broad administrative and discretionary authority over the institutions they manage") (internal quotation marks and citation omitted).**

## ANALYSIS

### 1. Exhaustion of Administrative Remedies

The Court first addresses an argument raised by the Wexford Defendants in their brief relating to the exhaustion of administrative remedies. Specifically, the Wexford Defendants argue that Plaintiff's renewed motion should be denied because Plaintiff has failed to exhaust his administrative remedies in regards to the denial of the June 5th referral. The argument fails, however.

The PLRA requires an inmate to exhaust available administrative remedies prior to bringing an action in court under federal law. **42 U.S.C. § 1997e(a)**. Where an inmate has an ongoing problem, however, in order to exhaust, the inmate "need not file multiple, successive grievances raising the same issue (such as prison conditions or policies)." ***Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013)**. Rather, "[O]nce a prison has received notice of, and an opportunity to correct a problem, the prisoner has satisfied the purpose of the exhaustion requirement." ***Id.*** At no point during this litigation have any of the defendants filed a motion for summary judgment based on

failure to exhaust, and the time to do so has long since passed. (*See* Doc. 51). The Court, therefore, assumes that Defendants have conceded that Plaintiff exhausted his administrative remedies as to the deliberate indifference claims raised in his complaint. Plaintiff's disagreement with the denial of the June 5th referral is merely part of an ongoing problem stemming from Plaintiff original deliberate indifference allegations. Since the Court assumes he has exhausted as to those allegations, he is not required to exhaust the grievance process as to the June 5th denied referral. The Court may consider the merits of Plaintiff's request for a preliminary injunction.

**2. Preliminary Injunction**

In order to obtain a preliminary injunction, Plaintiff must demonstrate that he is likely to succeed on the merits of his Eighth Amendment deliberate indifference claims. Prison officials violate the Eighth Amendment's proscription against "cruel and unusual punishments" if they display deliberate indifference to an inmate's serious medical needs. ***Greeno v. Daley*, 414 F.3d 645, 652–53 (7th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal quotation marks omitted)). *Accord Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009) ("Deliberate indifference to serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution.")**. A prisoner is entitled to reasonable measures to meet a substantial risk of serious harm — not to demand specific care. ***Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1074 (7th Cir. 2012) (stating that a prison doctor "is free to make his own, independent medical determination as**

**to the necessity of certain treatments or medications, so long as the determination is based on the physician's professional judgment and does not go against accepted professional standards"); *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).** Although a prison official may not continue a course of treatment he knows is blatantly ineffective, prisoners are not entitled to receive unqualified access to healthcare. ***See Holloway*, 700 F.3d at 1073-74**. A doctor may provide the care he feels is reasonable so long as it falls within a "range of acceptable courses based on prevailing standards in the field." ***Id.* at 1073**.

To prevail, a prisoner who brings an Eighth Amendment challenge of constitutionally-deficient medical care must satisfy a two-part test. ***Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011).** The first prong is whether the prisoner has shown he has an objectively serious medical need. ***Arnett*, 658 F.3d at 750. *Accord Greeno*, 414 F.3d at 653.** A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated. ***Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). *Accord Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (violating the *Eighth Amendment* requires "deliberate indifference to a *substantial* risk of *serious* harm.") (internal quotation marks omitted) (emphasis added).** Only if the objective prong is satisfied is it necessary to analyze the second, subjective prong, which focuses on whether a defendant's state of mind was sufficiently culpable. ***Greeno*, 414 F.3d at 652-53**.

Prevailing on the subjective prong requires a prisoner to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate health. ***Greeno*, 414 F.3d at 653.** The plaintiff need not show the defendant literally ignored his complaint, just that the defendant was aware of the serious medical condition and either knowingly or recklessly disregarded it. ***Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008).** Deliberate indifference is not negligence; rather it is more akin to intentional wrongdoing. ***McGee v. Adams*, 721 F.3d 474, 480 (7th Cir. 2013).** The standard is criminal recklessness, and even gross negligence will not meet this standard. ***Id.* at 481**.

Based on the record presented, the Court finds that Plaintiff can demonstrate he is likely to succeed in demonstrating deliberate indifference to his serious medical needs by Drs. Kayira and Ritz. The Court finds Dr. Kayira's testimony regarding the reason for the non-referral to be rather nonsensical and lacking in credibility. The Court's May 31st Order clearly did not require Wexford to referral Plaintiff to a specialist. Rather, it merely required that Plaintiff be examined by a Graham physician for the purpose of recommending a course of treatment. Dr. Kayira's assertion that his mistaken belief regarding the court order was the only reason he referred Plaintiff to a dermatologist is belied not only by the rationale he provided on Plaintiff's progress note, but also by the fact that there is no mention of a court order on the June 5th note. Dr. Kayira's notes clearly indicate that he was issuing the referral because previous treatments had failed. If this basis for the referral was merely pretense and the real basis was the belief that the

Court had ordered him to issue the referral, one would think that Dr. Kayira would have at least also referred to the Court's "order". In addition, Plaintiff, who the Court does find credible, testified that Dr. Kayira told him that he did not know why the referral had been denied. Dr. Kayira's statement to Plaintiff is clearly not true, as Dr. Kayira signed the referral denial form.

The Court also finds noteworthy Dr. Kayira's testimony regarding how he would treat Plaintiff going forward. Dr. Kayira acknowledged that past treatments had largely had not helped Plaintiff, and testified that had he not been under the belief that he was required to refer Plaintiff out, he would try treating Plaintiff with different antibiotics and possibly different steroids. After the June examination, however, Plaintiff again presented to Dr. Kayira with an infection on his head, and the doctor prescribed him the same antibiotic as was previously prescribed. While the infection may have cleared up, there is no indication that Dr. Kayira, contrary to his testimony, has provided Plaintiff with any differing antibiotics or steroids to treat the underlying AKN. Knowingly continuing a course of treatment known to be ineffective can constitute deliberate indifference, ***see Holloway*, 700 F.3d at 1073-74**, and based on these facts alone, a fact-finder could easily find that Dr. Kayira has done just that.

The Court finds that what the record surrounding Dr. Kayira's examination and treatment of Plaintiff likely demonstrates is that Dr. Kayira's notes from the examination accurately reflect his genuine medical judgment regarding the proper course of action as to Plaintiff's AKN. Therefore, without any real explanation as to why the referral was

denied, Dr. Ritz's failure to approve the referral in light of Dr. Kayira's notes and Plaintiff's medical history demonstrates Dr. Ritz likely acted with deliberate indifference as well. Dr. Ritz had been informed that treatment to that point had largely been a failure, and yet, he still denied the referral. The Court can only speculate as to why Dr. Kayira's changed his story; however, the Court does not buy the doctor's more recent claim that he only issued the referral under the mistaken belief that this Court ordered him to do so. As Plaintiff has still not been sent to a specialist or otherwise received differing treatment, Kayira's and Ritz's actions constitute ongoing violations that are still harming Plaintiff today.

The fact that neither Drs. Kayira nor Ritz are named defendants in this matter does not preclude the issuance of an injunction against Wexford. They are both employed by Wexford, who is a named defendant. Personal involvement—in Wexford's case via practice or policy—is a prerequisite for recovering damages in a 1983 case. ***Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001)**. Since Plaintiff is seeking injunctive relief in this instance, however, a lack of "personal involvement" is "irrelevant," ***see Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011),** and Wexford is the proper defendant to carry out any such relief.

Plaintiff is also likely to suffer irreparable harm if an injunction is not entered. Plaintiff testified that his keloid is painful, and his head constantly itches. He has also suffered from scarring. The Court gives credit to Plaintiff's testimony and finds him to be a reliable witness. An untreated painful condition, even though not life threatening,

can create an actionable claim under the Eighth Amendment. ***Gonzalez*, 663 F.3d at 315**; ***Gayton*, 593 F.3d at 620.** Where the non-issuance of an injunction would certainly result in continual pain and discomfort for Plaintiff, an injunction ordering that Plaintiff be referred to a dermatologist may result in relief for him.

In addition, the harm suffered by Plaintiff if an injunction were not issued is likely to be greater than the harm suffered by Defendants if one were issued. The Court sees little harm to Defendants if it requires them to send Plaintiff to a dermatologist. The injunction sought by Plaintiff does not require Wexford to take any actions that are out of the ordinary. Wexford is in the business of providing medical care to inmates, and sometimes providing adequate medical care requires an inmate be seen by a specialist outside the prison. Any burden imposed on Wexford would come in the form of the resources and money required to send Plaintiff to the specialist. Such a burden, however, is outweighed by the pain and harm caused to Plaintiff by his AKN. The injunction sought by Plaintiff merely requires Wexford to do its job: provide adequate healthcare to Plaintiff.

The public also has an interest in seeing a preliminary injunction issued. Anytime a citizen's constitutional rights are violated, the public interest in the vindication and protection of those rights is high. Acquiescence to the violation of a right not only erodes the protection of that right for all citizens, but can also erode the protection of all rights guaranteed under the Constitution. The public has an interest in the humane treatment of prisoners, not only because prisoners, like anyone else, possess

innate human dignity, but also because some members of the public outside of the prison walls may one day find themselves inside them and clearly therefore have an interest in receiving the same Eighth Amendment protections as Plaintiff.

Finally, the Court finds that the injunctive relief sought by Plaintiff is sufficiently narrow as required by the PLRA, with a caveat. Plaintiff does not ask for a specific medication, test, or procedure. He merely asks that the Court order that he be referred to a dermatologist within a reasonable time and that he receive ongoing treatment consistent with the specialist's recommendations. While the request to be seen by a specialist is sufficiently narrowly tailored, the Court declines today to order Wexford to comply with whatever recommendations the specialist may make. In the end, the Eighth Amendment may require Wexford to comply with the specialist's recommendations; however, the Court will not order it to do so without knowing what the recommendations are. If the specialist makes recommendations, and there is a dispute among the parties as to whether and/or the manner in which the recommendations are to be carried out, the dispute may be brought to the Court. As narrowed by the Court, the relief sought by Plaintiff is sufficiently narrowly tailored, and from the record before it, the Court finds that it is the least intrusive means necessary to remedy Plaintiff's harm.

## CONCLUSION

For the reasons discussed above, the Court finds that preliminary injunctive relief is appropriate in this matter. Plaintiff's Renewed Motion for Immediate Medical

Attention and Preliminary Injunction (Doc. 135) is **GRANTED in part**. The Court **ENJOINS** Defendant Wexford and **ORDERS** that Wexford shall ensure that Plaintiff is examined and treated by a dermatological specialist within 30 days.

**IT IS SO ORDERED**.
DATED: 10/27/2017

*/s/ Stephen C. Williams*
STEPHEN C. WILLIAMS
United States Magistrate Judge